IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

NATASHA MOORE,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.                                Case No. 06-cv-492-DRH

**MEMORANDUM & ORDER**

**HERNDON, District Judge:**

### I. INTRODUCTION

Before the Court is petitioner Natasha Moore's Section 2255 Petition, which seeks collateral review of her sentence on the ground that it was imposed in violation of her Fifth Amendment due process rights. Specifically, Petitioner claims "the Court was denied facts critical to assessing the criteria of **18 U.S.C. § 3553** [the sentencing guideline factors], specifically that [Natasha Moore] was pregnant and would be delivering her child during the term of her incarceration" (Doc. 1, p. 5). The Government has timely filed an opposing Response (Doc. 4), so the issue is now ripe for determination. For reasons as discussed within this Order, Petitioner's Section 2255 Petition must be denied.

## II. BACKGROUND

Natasha Moore, along with her husband, Nathan Moore, were charged by Indictment, issued on April 22, 2004, with one count of Conspiracy to Commit Mail Fraud in violation of **18 U.S.C. §§ 1341 and 1349**. *See United States v. Moore*, Case No. 04-cv-30053-DRH (Doc. 1). Nearly a year later, the Moores entered open pleas of guilty to the Indictment on April 18, 2005. According to the Indictment, the Moores fraudulently posed as operators of businesses which promoted entertainment events in the St. Louis, Missouri area. Additionally, they assumed the names of certain performing art schools and related companies, all for the purpose of establishing corporate vendor accounts under these various assumed names. The Moores obtained lines of credit with the vendors by providing bogus credit references. Then, the Moores actually posed as their own credit references when contacted by the vendors for verification. The vendor lines of credit were necessary for the Moores to order merchandise, such as DVD's and books, which they subsequently sold on internet auction sites. The merchandise was shipped from the vendors to the Moores via United Parcel Service ("UPS") to a UPS store located in Belleville, Illinois. Because the Moores never paid the vendors for the merchandise ordered, the made a substantial profit. The telephone numbers listed for these bogus credit references actually belonged to the Moores.

The Addendum to Petitioner's Presentence Investigation Report ("PSR") showed the intended loss to the thirteen identified victim vendors was in an amount of $293,536.88, which included orders that had been fraudulently placed by not yet

filled. On July 22, 2005, the Court sentenced Petitioner to 33 months' imprisonment and three years' supervised release under the advisory guidelines. She was also ordered to pay restitution in the amount of $132,425.14, with a special assessment of $100.00. Petitioner timely appealed her sentence with the Court of Appeals for the Seventh Circuit on the grounds that her sentence was unreasonable and excessive. After briefing by the parties and oral argument, the Seventh Circuit affirmed the judgment of the district court, finding Petitioner's sentence was reasonable and appropriately determined using post-*Booker* procedures. **See *United States v. Moore*, Nos. 05-3281 and 05-3401, 2006 WL 906435 at \*2-3 (7th Cir. Apr. 5, 2006**).

### III. ANALYSIS

Petitioner's sole ground asserted in her Section 2255 Petition is that she was denied her due process rights guaranteed by the Fifth Amendment because the Court, at the time of her sentencing hearing, was not aware and therefore could not take into consideration the fact that she was pregnant and would deliver her child while incarcerated. As the Government notes in its Response, this is the first time Petitioner has raised this issue and concludes that it must be procedurally barred from consideration.

**A.   Collateral Review and Procedural Default**

**Section 2255** provides, in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground

> that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

**28 U.S.C. § 2255 (2006).**

However, a Section 2255 Petition "is neither a recapitulation of nor a substitute for a direct appeal." ***Omstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995)(quoting *Daniels v. United States,* 26 F.3d 706, 711 (7th Cir. 1994)**).

The Seventh Circuit has made it very clear that there are three types of issues that cannot be raised in a Section 2255 motion:

> (1) issues that were raised on direct appeal, absent showing of changed circumstances; (2) non constitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

***Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992)**, ***overruled on other grounds*, *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994)**.
Therefore, if an issue raised in a Section 2255 Petition was not also previously raised on direct appeal, it will be barred from the district court's collateral review unless the petitioner can show either: (1) "good *cause* for the failure to raise the claims on direct appeal and actual *prejudice* from the failure to raise those claims;" or (2) show that "a refusal to consider the issue would lead to a fundamental miscarriage of justice." ***Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996)(emphasis**

in original)(quoting *Reed v. Farley*, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300 (1994)).

Additionally, an evidentiary hearing on a Section 2255 Petition is unnecessary when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." **28 U.S.C. § 2255 (2006)**. The Seventh Circuit additionally requires a detailed affidavit to substantiate the Section 2255 Petition, so that Petitioner may not merely rest of "mere unsupported assertions." **Barry v. United States, 528 F.2d 1094, 1101 n. 31 & 32 (7th Cir. 1976)** *cert. denied*, **429 U.S. 826, 97 S. Ct. 81 (1976)**. Thus, an evidentiary hearing is not mandatory but, rather, at the discretion of the district court. **Prewitt v. United States, 83 F.3d 812, 820 (7th Cir. 1996)(citing *United States v. Taglia*, 922 F.2d 413, 319 (7th Cir. 1991))**.

B.   **Procedural Bar**

As the Government observes, Petitioner did not raise the instant constitutional issue at either her sentencing hearing or on direct appeal. Thus, in order to overcome a procedural bar to collateral review here, she must show either (1) good cause and actual prejudice or (2) a fundamental miscarriage of justice would occur if collateral review was not given. Although Petitioner fails to specifically argue either of these grounds, as she is acting *pro se*, the Court will construe her Petition with a certain degree of leniency when applying its analysis. **See Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir. 1998)("[D]istrict courts must construe** *pro*

*se* **pleadings liberally.")(citing** *Haines v. Kerner***, 404 U.S. 519, 520-21 (1972))**.

    1.    **Cause and Actual Prejudice**

"Cause" excusing Petitioner's failure to raise the instant issue on direct appeal can only be shown as an "external impediment" and not merely due to Petitioner's own inadvertence. ***Oliver v. United States*, 961 F.2d 1339, 1342 (7th Cir. 1992)(citing** *Coleman v. Thompson***, 501 U.S. 722, 753 (1991))**. Again, Petitioner has not offered any reason showing "cause" for her failure to raise the issue on direct appeal.[1] Although being unaware at the time of sentencing that she was pregnant could not technically be considered something external to her own doing,

it could be considered "cause" for her failure to raise the issue during her sentencing hearings. However, the sentencing hearing was on July 22, 2005 – the Seventh Circuit did not issue its opinion regarding her direct appeal until April 5, 2006. If Petitioner was pregnant (and presumably unaware of her condition) on July 22, 2005, she would have eventually become aware of her condition throughout the appellate proceedings and thus, should have at least requested to supplement her brief (or at least could have mentioned it during oral arguments, held on March 27, 2006).[2] Instead, the only family concerns she ever raised with the Court or the

---

[1] It is unclear from her Section 2255 Petition, whether Petitioner was aware of her pregnancy at the time of sentencing.

[2] The Court is also assuming, best-case scenario, that Petitioner was still unaware of her pregnancy when she submitted her appellate brief on October 25, 2005. However, this is doubtful, as Petitioner, sometime around December, 2005, wrote a letter requesting that the Court recommend her to be allowed to participate in a special program for incarcerated women with

Seventh Circuit was regarding the welfare of her young son. Even when construing Moore's Section 2555 Petition with the utmost leniency, the Court still does not find adequate grounds to show "cause," and therefore finds it unnecessary to discuss in detail, (*assuming arguendo* that cause *was* demonstrated) why "actual prejudice" was also not shown.

### 2.   Fundamental Miscarriage of Justice

The second means of circumventing the procedural bar requires Petitioner to show that the Court's failure to consider her grounds on collateral review will lead to a "fundamental miscarriage of justice." As before, Petitioner offers no reasons to support such an argument, yet the Court must still determine whether refusing a collateral review would lead to such an outcome. Petitioner's claim of a Fifth Amendment due process violation here is somewhat unique, at least to Seventh Circuit precedent. The Court construes this as an assertion that awareness of Petitioner's pregnancy during the time of her sentencing would have lead the Court to impose a much lesser term of imprisonment than the 33-month term given. Thus, Petitioner seems to be conveying the argument that because the Court was *un*aware of her condition at the time, the failure to take her pregnancy into consideration worked to her substantial disadvantage.

First, the Court did give consideration to her family situation, albeit the concerns were regarding her young son and not an unborn child. However, the Court

---

infants – she was later accepted into this program in April, 2006.

conducted a thorough inquiry at the sentencing hearing, clearly concerned about the child's welfare. The Moores had requested their sentences be staggered, with Nathan to serve his first and Petitioner second, so that one parent could remain with their son. The Court, realizing that it was very unusual to order Petitioner's judgment of imprisonment be stayed pending the completion of her husband's sentence, agreed to allow the staggered sentences for the welfare of the Moores' son. Yet, given the Court's extreme concern for the child's welfare, it did not consider the 33-month term of imprisonment for Petitioner to be longer than necessary.[3]

Subsequently, the Moores requested the Order be amended, so that they could both serve their sentences at the same time, believing Petitioner's absence from the child would be less detrimental while he was of a younger age, rather than several years later once his father had completed his sentence and the boy had further matured. Thus, the Court ordered that the stay of Petitioner's judgment of imprisonment be lifted, finding Petitioner's belief that "a delay in her incarceration would impact their child more dramatically as he becomes more mature then it would presently," as good cause for granting the request. Despite the Court's accommodation to the Moores' requests, it did not find Petitioner's sentence unreasonable in light of the circumstances. Further, while incarcerated, Petitioner sent a letter to the Court, requesting recommendation into a program that would allow her to interact with her baby during incarceration, once she had given birth.

---

[3] During sentencing, it was conveyed to the Court that the Moores' young son would be taken care of by his grandparents if both parents were to be incarcerated at the same time.

After careful consideration, the Court gave its recommendation; Petitioner was subsequently accepted into this program.

For the Court to say that it would have fashioned a different sentence had it been aware of Petitioner's pregnancy at the time of her sentencing would place future sentence determinations at the summit of a slippery slope, thereby encouraging female defendants to become pregnant prior to being sentenced in order to receive leniency.[4]  However, as the Government points out, the Court often

---

[4] This case bears a close resemblance in some manner to a First Circuit case, ***United States v. Pozzy***, the rationale of which the Court believes insightful, even though other courts have expressed varying opinions on the issue:

> The pregnancy of convicted female felons is neither atypical nor unusual. It is something that the Bureau of Prisons has had experience in handling.
>
> It is true, as the sentencing judge stated, that pregnancy is not mentioned in the guideline concerning physical condition, § 5H1.4. But we hardly think that is because the Commission did not think of it. Under the guideline, "only an extraordinary physical impairment may be a reason to impose a sentence other than imprisonment." We think the Commission was fully aware that some convicted female felons are pregnant at the time of sentencing. If it had thought pregnancy was a sentencing factor to be considered, the Commission would have said so.
>
> We agree with the sentencing judge that a child will bear a stigma from being born in prison. But it has been recognized since time immemorial that the sins of parents are visited upon their children. Moreover, the stigma could have been avoided, or at least mitigated, if the judge had postponed defendant's commitment until after the child was born, as he had the power to do. In this connection, the government has represented that defendant's sister, the mother of two children, had volunteered to look after the child until defendant had completed her prison term. It must also be noted that defendant became pregnant after she and her husband were arrested and charged with drug trafficking. We agree with the last paragraph of the PSI, which stated: "This office believes that to allow a departure downward for pregnancy could set a precedent that would have dangerous consequences in the future, sending an obvious message to all female defendants that pregnancy is 'a way out.' "
>
> Although we will not go so far as to hold that pregnancy can never be a factor to be considered in departing downward from the guidelines, the sentencing judge erred in using it in this case.

***United States v. Pozzy***, 902 F.2d 133, 139 (1st Cir. 1990).

sentences defendants with latent medical conditions that will later manifest during incarceration. The Court sometimes sentences defendants with *known* medical conditions. Rather than conforming a sentence to the medical condition, the Federal Bureau of Prisons attempts to house the defendant in a facility that is capable of accommodating that defendant. One may even argue that Petitioner's due process rights were violated because she was not sentenced based upon accurate information. **See United States v. Tucker, 404 U.S. 443, 447 (1972)**. The sentence is only to be set aside, however, when it is based upon *false* information – not merely upon a lack of information (especially information that does nothing to exonerate Petitioner's wrongful acts) as the Government correctly asserts. **See id.; see also United States v. Rone, 743 F.2d 1169, 1171 (7th Cir. 1984)("A sentence must be set aside where the defendant can demonstrate that false information formed part of the basis for the sentence. The defendant must show, first, that the information before the sentencing court was false, and, second, that the court relied on the false information in passing sentence.")(citing United States v. Harris 558 F.2d 366, 375 (7th Cir. 1977))**.

In this case, even if Petitioner were somehow to show the information upon which the Court relied was false, she cannot convince the Court that the "false" information (that she was not pregnant at the time of her sentencing) formed the basis for the sentence. Instead, her plea of guilty to the Indictment formed the basis

for the sentence – a sentence that the Court still believes was appropriately fashioned to serve as adequate punishment for Petitioner's acceptance of her wrongful behavior. Thus, the Court also does not find there would be a miscarriage of justice if Petitioner was procedurally barred from collateral review of her 2255 claim.

## IV. CONCLUSION

In sum, Petitioner's claim of violation of her Fifth Amendment due process rights is procedurally barred as she failed to raise it on her direct appeal and has neither shown cause and actual prejudice or that it would lead to a fundamental miscarriage of justice if the Court denied collateral review. Therefore, Natasha Moore's Section 2255 Petition (Doc. 1) is **DENIED**.[5]

**IT IS SO ORDERED**.

Signed this 2nd day of July, 2007.

/s/        David  RHerndon
**United States District Court**

---

[5] As a caveat, the Court expresses that even though it must deny this Section 2255 Petition, it still hopes Petitioner has benefitted from her incarceration so that she may not again place herself in a situation where she is required, by the criminal justice system, to be separated from her family again.